**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FIDELITY & DEPOSIT COMPANY
OF MARYLAND,

        Plaintiff,

V.                                    Case No.  09 C 6390

LABORERS' PENSION FUND, LABORERS'
WELFARE FUND OF THE HEALTH AND WELFARE
DEPARTMENT OF THE CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL OF CHICAGO AND
VICINITY, THE CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL OF CHICAGO AND
VICINITY TRAINING FUND, THE LABORERS' DISTRICT
COUNCIL LABOR-MANAGEMENT COOPERATION
COMMITTEE, THE CHICAGO AREA INDEPENDENT
CONTRACTORS' ASSOCIATION, THE LABORERS'
EMPLOYERS' COOPERATION AND EDUCATION TRUST,
THE CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY, CENTRAL
LABORERS' PENSION FUND, NORTH CENTRAL ILLINOIS
LABORERS' HEALTH AND WELFARE FUND, NORTHERN
ILLINOIS ANNUITY FUND, ILLINOIS LABORERS'
AND CONTRACTORS JOINT APPRENTICESHIP AND
TRAINING FUND, MIDWEST REGION FOUNDATION
FOR FAIR CONTRACTING, INC., NORTHERN ILLINOIS
WELFARE FUND, INDUSTRY ADVANCEMENT FUND,
LABORERS'-EMPLOYERS COOPERATION
EDUCATION TRUST, VACATION FUND, MARKET
PROMOTION FUND, ORGANIZATIONAL FUND, TRUSTEES
OF BRICKLAYERS AND ALLIED CRAFTSMAN LOCAL 74
FRINGE BENEFIT FUNDS, ILLINOIS DISTRICT COUNCIL
 No. 1 OF THE INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFTSWORKERS AFL-CIO
LOCAL UNION 74, KMC MASONRY, LLC,
NICHOLAS & ASSOCIATES, INC., NICHOLAS E.
PAPANICHOLAS, NEPCO MANAGEMENT & LEASING, INC.,
OLEGARIO ANAYA, AND GUISSEPE RIBAUDO,

        Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

Now Comes Plaintiff Fidelity & Deposit Company of Maryland ("F&D") by and through its attorneys Cornelius F. Riordan and Regina E. Gaebel and for its complaint for declaratory judgment against Defendants Laborers' Pension Fund, Laborers' Welfare Fund Of The Health And Welfare Department Of The Construction And General Laborers' District Council Of Chicago And Vicinity, The Construction And General Laborers' District Council Of Chicago And Vicinity Training Fund, The Laborers' District Council Labor-Management Cooperation Committee, The Chicago Area Independent Contractors' Association, The Laborers' Employers' Cooperation And Education Trust, The Construction And General Laborers' District Council Of Chicago, Central Laborers' Pension Fund, North Central Illinois Laborers' Health and Welfare Fund, Northern Illinois Annuity Fund, Illinois Laborers' and Contractors Joint Apprenticeship And Training Fund, Midwest Region Foundation For Fair Contracting, Inc., Northern Illinois Welfare Fund, Industry Advancement Fund, Laborers'-Employers Cooperation Education Trust, Vacation Fund, Market Promotion Fund, Organizational Fund, Trustees Of Bricklayers and Allied Craftsman Local 74 Fringe Benefit Funds, Trustees Of Bricklayers And Allied Craftsman Local 74 Fringe Benefit Funds, Illinois District Council No. 1 Of The International Union Of Bricklayers And Allied Craftsworkers, AFL-CIO Local Union 74, KMC Masonry, LLC, Nicholas & Associates, Inc., Nicholas E. Papanicholas, NEPCO Management & Leasing, Inc., Olegario Anaya, And Guissepe Ribaudo, states as follows:

## **JURISDICTION**

1.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one that may be under the provisions of 28 U.S.C. § 1441(b), in that it arises under Employee Retirement Income Security Act of 1974 ("ERISA"), as amended,

Sections 502 (e)(1) and (2), 29 U.S.C. § 1132(e)(1) and (2), 514(a), 29 U.S.C. §1144(a), and under the Declaratory Judgment Act, 28 U.S.C. § 2201 (a).

    2.    Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

    3.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in pertinent part:

> In a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

## VENUE

    4.    Venue is premised upon 28 U.S.C. § 1391 as certain of the defendants are residents of this District and certain of the transactions complained of occurred within this District.

## GENERAL ALLEGATIONS

**Parties**

    5.    Fidelity & Deposit Company of Maryland ("F&D" or the "Surety") is a Maryland Corporation, which at all times herein relevant was authorized to and which did transact business in the State of Illinois.

    6.    Laborers' Pension Fund (the "Laborers' Pension Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

3

7.     Laborers' Welfare Fund Of The Health And Welfare Department Of The Construction And General Laborers' District Council Of Chicago And Vicinity (the "Laborers' Welfare Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

8.     The Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Laborers' Training Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

9.     The Laborers' District Council Labor-Management Cooperation Committee (the "LDCLMC") is a labor organization within the meaning of 29 U.S.C. §152(5), that has offices and conducts business within this District.

10.     The Chicago Area Independent Contractors' Association (the "CAICA") is a labor organization within the meaning of 29 U.S.C. §152(5), that has offices and conducts business within this District.

11.     The Laborers' Employers' Cooperation and Education Trust (the "LECET") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

12.     The Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America (the "Local Laborers' Union") is a labor organization within the meaning of 29 U.S.C. §152(5), that has offices and conducts business within this District.

4

13.     Central Laborers' Pension Fund (the "CL Pension Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

14.     North Central Illinois Laborers' Health and Welfare Fund (the " NCIL Welfare Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

15.     Northern Illinois Annuity Fund (the "NI Annuity Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

16.     Illinois Laborers' and Contractors Joint Apprenticeship and Training Fund (the "ILC Training Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

17.     Midwest Region Foundation For Fair Contracting, Inc. (the "MRFFC") is an Illinois not-for-profit corporation and is a labor organization within the meaning of 29 U.S.C. §152(5), that has offices, conducts business and administers the plan within this District.

18.     Northern Illinois Welfare Fund (the "NI Welfare Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

19.     Industry Advancement Fund (the "Advancement Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

5

20.    North Central Illinois Laborers' District Council Laborers' and Employers Cooperation Education Trust (the "Central IL LECET") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

21.    Laborers' of Illinois Vacation Fund (the "Vacation Fund") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

22.    Market Promotion Fund is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

23.    Organizational Fund is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

24.    The Great Plains Laborers' District Council ("Central Laborers' Union") is a labor organization within the meaning of 29 U.S.C. §152(5), that has offices and conducts business within this District.

25.    Trustees Of Bricklayers And Allied Craftsmen Local 74 Fringe Benefit Funds (the "Bricklayers Funds") is a multiemployer benefit plan within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(a) that has offices, conducts business and administers the plan within this District.

26.    Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftsworkers, AFL-CIO Local Union 74 (the "Bricklayers Union") is a labor

organization within the meaning of 29 U.S.C. §152(5), that has offices and conducts business within this District.

27.    Nicholas & Associates, Inc. ("NAI") is an Illinois Corporation, which at all times herein relevant was authorized to and which did transact business in the State of Illinois.

28.    KMC Masonry, LLC ("KMC") is an Illinois Limited Liability Company, which at all times herein relevant, was authorized to and which did transact business in the State of Illinois.

29.    Nicholas E. Papanicholas ("Papanicholas") is and at all times herein relevant, a resident of the state of Illinois.

30.    NEPCO Management & Leasing, Inc. is an Illinois Corporation, which at all times herein relevant was authorized to and which did transact business in the State of Illinois.

31.    Olegario Anaya ("Anaya") is and at all times herein relevant, a resident of the state of Illinois.

32.    Guissepe Ribaudo ("Ribaudo") is and at all times herein relevant, a resident of the state of Illinois.

**Collective Bargaining Agreements**

33.    KMC entered into a collective bargaining agreement with the Local Laborers' Union on or about June 30, 2006 ("Local Laborers' CBA"). A copy of the agreement is attached hereto as Exhibit A.

34.    Pursuant to the terms of the Local Laborers' CBA, KMC is required to make contributions to the Laborers' Pension Fund, the Laborers' Welfare Fund, Laborers' Training Fund, LDCLMC, CAICA, and the LECET (collectively the "Laborers' Funds") on behalf of its employees who are members of the Local Laborers' Union.

35.     KMC entered into a collective bargaining agreement with the Central Laborers' Union on or about October 24, 2008 ("Central Laborers' CBA").  A copy of the agreement is attached hereto as Exhibit B.

36.     Pursuant to the terms of the Central Laborers' CBA, KMC is required to make contributions to the CL Pension Fund, NCIL Welfare Fund, NI Annuity Fund, ILC Training Fund, NI Welfare Fund, Central IL LECET, Vacation Fund, MRFFC, Central Laborers' Union, Marketing Promotional Fund, and the Organizational Fund (collectively the "Central Laborers' Funds") on behalf of its employees who are members of the Central Laborers' Union.

37.     On or about February 18, 2006, KMC entered into a collective bargaining agreement with the Bricklayers' Union ("Bricklayers' CBA").  A copy of the agreement is attached hereto as Exhibit C.

38.     Pursuant to the terms of the Bricklayers' CBA, KMC is required to make contributions to the Trust of Bricklayers and Allied Crafts Local No. 74 of DuPage County, Illinois a/k/a Masons' and Plasterers' Welfare Fund (the "Bricklayers' Welfare Fund") and the Pension Fund of the Bricklayers and Allied Crafts Local No. 74 of DuPage County, Illinois a/k/a Masons' and Plasterers' Local No. 74 of DuPage County, Illinois (the "Bricklayers' Pension Fund") (collectively the "Bricklayers' Funds") on behalf of its employees who are members of the Bricklayers' Union.

**Indemnity Agreement**

39.     On or about April 15, 2004, NAI, Papanicholas, and NEPCO (collectively "the Indemnitors") executed an Agreement of Indemnity ("AI") in favor of the Surety, a copy of which is attached hereto and incorporated herein by reference as Exhibit D.

8

40.     Pursuant to the terms of the AI, Papanicholas, NAI and NEPCO, in return for the execution by the Surety, from time to time, of certain surety bonds requested by NAI, agreed to exonerate, indemnify and hold the Surety harmless from and against losses and expenses sustained or incurred as a result of issuing any and all such bonds according to the terms and conditions of the AI, including, but not limited to, the following relevant provisions:

## INDEMNITY

SECOND: The Contractor [NAI] and Indemnitors [Papanicholas and NEPCO] shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.  Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.  Such payment shall be equal to the amount of the reserve set by the Surety.

41.     Thereafter, at the request of NAI and Papanicholas and in reliance upon and in consideration of the promises contained in the AI, F&D issued the various surety bonds that are hereinafter described.

42.     Pursuant to the AI, the Indemnitors and each of them are liable to F&D for any and all losses sustained by F&D as a result of issuing the hereinafter described surety bonds and for any and all costs, interest, expenses, including, without limitation, attorneys fees, incurred by F&D as a result of issuing the said surety bonds.

9

## COUNT I

### The Kaneland Project Claims

1.-42.   F&D restates its allegations contained in paragraphs 1 through 42 of the General Allegations as paragraphs 1 through 42 of Count I.

43.    On or about March 18, 2008, NAI, as general contractor, entered into an agreement with the Kaneland Community Unit School District #302 ("District #302"), as owner, whereby NAI agreed to furnish labor and materials for the construction of Kaneland Harter Middle School (the "Kaneland Project").

44.    On or about March 24, 2008, F&D issued a payment bond (the "Kaneland Payment Bond") bearing number 08842104 for the Kaneland Project, in the penal sum of $35,807,333.00, with NAI, as the principal, District #302, as obligee, and F&D, as the surety.  A copy of the Kaneland Payment Bond is attached hereto as Exhibit E.

45.    Upon information and belief, NAI, thereafter, entered into an oral subcontract with KMC to furnish labor and materials for the masonry work on the Kaneland Project.

46.    Upon information and belief, NAI made payments to KMC for certain of the labor and materials KMC furnished on the Kaneland Project.

47.    The Bricklayers' Union and Bricklayers' Funds served a notice of claim dated June 2, 2009 upon KMC, NAI, and District #302, by which the Bricklayers' Union and Bricklayers' Funds asserted a claim in the amount of $317,827.65 against the Kaneland Payment Bond for recovery of amounts due from KMC to its employees arising from work allegedly performed by said employees on the Kaneland Project (the "Bricklayers' Kaneland Bond Claim").  A copy of said notice of claim is attached hereto as Exhibit F.

48.     The Local Laborers' Union and Local Laborers' Funds served a notice of bond claim on or prior to August 21, 2009 upon F&D, asserting a claim in the amount of $131,504.63 against the Kaneland Payment Bond for recovery of amounts due from KMC to its employees arising from work allegedly performed by said employees on the Kaneland Project (the "Local Laborers' Kaneland Bond Claim").

**ERISA Preemption**

49.     The Local Laborers' Kaneland Bond Claim is premised on KMC's alleged failure to make contributions to employee benefits contribution plans as required by ERISA §502(e)(1) and (2).

50.     The Bricklayers' Kaneland Bond Claim is premised on KMC's alleged failure to make contributions to employee benefits contribution plans as required by ERISA §502(e)(1) and (2).

51.     By asserting a claims pursuant to the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq*, against the Kaneland Payment Bond issued by F&D, the Local Laborers' Union, Local Laborers' Funds, Bricklayers' Union and Bricklayers' Funds are attempting to hold F&D responsible for KMC's failure to abide by its obligation under ERISA to make contributions to the employee benefits plans of the respective Funds.

52.     Section 514(a) of ERISA, 29 U.S.C. §1444(a), preempts and supersedes any and all claims under State laws that relate to, connect to, or make reference to any employee benefit plan.

53.     The Local Laborers' Union and Local Laborers' Funds allege that KMC failed to make contributions to Laborers' Pension Fund, Laborers' Welfare Fund Of The Health And Welfare Department Of The Construction And General Laborers' District Council Of Chicago

And Vicinity, The Construction And General Laborers' District Council Of Chicago And Vicinity Training Fund, The Laborers' District Council Labor-Management Cooperation Committee, The Chicago Area Independent Contractors' Association, The Laborers' Employers' Cooperation And Education Trust, And The Construction And General Laborers' District Council Of Chicago. Those Funds are each related to, connected to, or make reference to an employee benefit plan under ERISA.

54.    The Bricklayers' Union alleges that KMC failed to make contributions to Bricklayers Pension Fund and Bricklayers Welfare Fund. Those Funds are each related to, connected to, or make reference to an employee benefit plan under ERISA.

55.    The claims asserted by the Local Laborers' Funds and Bricklayers' Funds for KMC's alleged failure to make contributions to the Local Laborers' Funds and the Bricklayers' Funds are therefore, related to, connected to, or make reference to an employee benefit plan.

56.    Therefore, the claims that the Local Laborers' Funds and Bricklayers' Funds have asserted against F&D and its obligations under the Kaneland Payment Bond, are preempted, superseded and governed by ERISA, rather than the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq.*

**Unions and Funds Have No Standing**

57.    F&D has no contractual relationship with the Local Laborers' Union, Bricklayers' Union, Local Laborers' Funds, nor the Bricklayers' Funds in relation to the Kaneland Payment Bond and is not a signatory to any labor agreements or trust agreements with the Local Laborers' Union, Bricklayers' Union, Local Laborers' Funds, nor the Bricklayers' Funds; and therefore, has no obligation under ERISA 29 U.S.C. §1145 to make contributions to either the Bricklayers' Funds nor the Local Laborers' Funds.

12

58.    Pursuant to the terms and conditions of the Kaneland Payment Bond, the Local Laborers' Union, the Bricklayers' Union, the Local Laborers' Funds and the Bricklayers' Funds are not claimants within the meaning of the Kaneland Payment Bond

59.    The term "Claimant" in the Kaneland Payment Bond is defined in pertinent part as:

> §15.1    An individual or entity having direct contact with the Contractor [NAI] or with a subcontractor [KMC] of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract.

60.    The Local Laborers' Union, the Bricklayers' Union, the Local Laborers' Funds and the Bricklayers' Funds did not have contracts with KMC to furnish labor, materials or equipment to the Kaneland Project.

61.    The Local Laborers' Union, Bricklayers' Union, Local Laborers' Funds and Bricklayers' Funds are subject to the conditions and limitations contained within the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq.*

62.    Under Section 1 the Illinois Public Construction Bond Act, 30 ILCS 550/1, only the principal contractor and subcontractors can assert a payment bond claim for labor performed and/or materials furnished in the performance of the contract for public improvements.

63.    The Local Laborers' Union, Bricklayers' Union, Local Laborers' Funds and the Bricklayers' Funds did not furnish any labor, materials or equipment for use in the performance of the construction of the Kaneland Project.

64.    Therefore, under the terms of the Illinois Construction Bond act and the Kaneland Payment Bond, the Local Laborers' Union, the Bricklayers' Union, the Local Laborers' Funds and the Bricklayers' Funds lack the standing to assert a claim on the Kaneland Payment Bond.

**Failure to Mitigate**

65.    Upon information and belief, prior to April 21, 2009, NAI was notified by the Local Laborers' Funds that KMC had been delinquent in its fund contributions to the Local Laborers' Funds and Local Laborers' Union for the work KMC's employees performed on the Kaneland Project from November 2008 through April 2009.

66.    Upon information and belief, after receiving notice from the Local Laborers' Union and Local Laborers' Funds, NAI withheld the amounts due to the Local Laborers' Funds from the progress payments to KMC and made KMC's contribution payments directly to the Local Laborers' Funds.

67.    On or about July 23, 2009, Counsel for the Local Laborers' Funds notified F&D that KMC had failed to make payment contributions to the Local Laborers' Funds pursuant to KMC's collective bargaining agreement and trust agreement with the Local Laborers' Union from November 2008 through April 2009 for the Kaneland Project.

68.    The Local Laborers' Union and Local Laborers' Funds had a duty to mitigate the damages incurred by KMC's alleged failure to make contributions to the Local Laborers' Union and Local Laborers' Funds.

69.    Pursuant to the terms of the Local Laborers' CBA and the Joint Agreement between the Local Laborers' Union and the Concrete Contractors Association of Greater Chicago, Illinois Small Pavers Association, Chicagoland Association of Wall and Ceiling Contractors, Chicago Area Scaffolding Association, and the Chicago Area Rail Contractors Organization (the "Local Laborers' Joint Agreement"), when a contractor fails to make timely contributions to the Local Laborers' Funds, the Local Laborers' Union is permitted to stop

providing labor to said contractor's job.  A copy of the Local Laborers' Joint Agreement is attached hereto as Exhibit G.

70.    The Local Laborers' Joint Agreement states in pertinent part:

> Article XI ¶5        The Union reserves and shall have the right to remove its men from any job upon the failure of the Employer to pay the wages due any of its Employees or fringe benefits which may be due by reason of the hours of employment.

71.    Upon KMC's failure to make contributions to the Local Laborers' Funds, the Local Laborers' Union had the duty to mitigate its damages by stopping the job or removing the Laborers from KMC's portion of the job for the Kaneland Project; thereby reducing the number of months of delinquent contributions.

72.    Therefore, because the Local Laborers' Union breached its duty to mitigate its damages and the damages to the Local Laborers' Funds, F&D is not liable to the Local Laborers' Union and Local Laborers' Funds on the Local Laborers' Kaneland Bond Claim asserted against the Kaneland Payment Bond.

73.    Upon information and belief, prior to April 21, 2009, NAI was notified by the Bricklayers' Funds that KMC had been delinquent in its fund contributions to the Bricklayers' Funds and Bricklayers' Union for the work KMC's employees performed on the Kaneland Project from November 2008 through April 2009.

74.    On or about June 25, 2009, the Bricklayers' Funds notified F&D that KMC had failed to make payment contributions to the Bricklayers' Funds pursuant to KMC's collective bargaining agreement with the Bricklayers' Union from November 2008 through April 2009 for the Kaneland Project.

15

75.    The Bricklayers' Union and Bricklayers' Funds had a duty to mitigate the damages incurred by KMC's alleged failure to make contributions to the Bricklayers' Union and Bricklayers' Funds.

76.    Pursuant to the terms of the Bricklayers' CBA and the Joint Agreement between the Bricklayers' Union and the Northern Illinois Mason Employers Council (the "Bricklayers Joint Agreement"), when a contractor fails to make timely contributions to the Bricklayers Funds, the Bricklayers' Union is permitted to stop providing labor to said contractor's job.

77.    The Bricklayers' Joint Agreement states in pertinent part:

> §8.16(D)      It shall be considered a violation of this Agreement for an Employer to fail to pay or comply with any provisions of this Article or any rule or regulation made by the Trustees administering the Funds.  If the Unions receive written notice from one or more of the Trustees of the Funds, designated by the Funds for that purpose, that the Employer has failed to pay in full any sum due the Funds under this Article and that such failure has continued for forty-eight (48) hours after an Employer has received written notice thereof, *the Union is permitted to stop any job* of that Employer, and may publicize such stoppage or attempted stoppage of work, until all sums due from the Employer under this Article have been paid in full… [Emphasis added]

78.    Upon KMC's failure to make contributions to the Bricklayers' Funds, the Bricklayers' Union had the duty to mitigate its damages by stopping KMC's job or refusing to provide union workers for KMC's portion of the Kaneland Project; thereby reducing the number of months of delinquent contributions.

79.    Therefore, because the Bricklayers' Union breached its duty to mitigate its damages and the damages of the Bricklayers' Funds, F&D is not liable to the Bricklayers' Union and Bricklayers' Funds on the Bricklayers' Kaneland Bond Claim asserted against the Kaneland Payment Bond.

**KMC Bond Claim**

80.    On or about June 10, 2009, KMC served its notice of claim upon the Kaneland Bond in the amount of $1,772,766.53 ("KMC Kaneland Bond Claim").  A copy of the KMC Kaneland Bond Claim is attached hereto as Exhibit H.

81.    Upon information and belief, NAI made payments to KMC for the full amount due and owing for KMC's work performed on the Kaneland Project.

82.    Pursuant to the terms and conditions of the Kaneland Payment Bond, F&D's obligation to a Claimant is null and void if the Contractor makes payment to the Claimant for all sums due.

83.    Therefore, F&D is not liable to KMC for any sums claimed by KMC on the Kaneland Bond.

**Anaya and Ribaudo Bond Claim**

84.    On or about September 11, 2009, Anaya and Ribaudo served its notice of claim upon F&D, KMC, NAI and District #302 on the Kaneland Bond in the amount of $2,048.00 for alleged unpaid wages for work allegedly performed by Anaya and Ribaudo as employees or former employees of KMC on the Kaneland Project ("Anaya and Ribaudo Bond Claim").  A copy of the Anaya and Ribaudo Kaneland Bond Claim is attached hereto as Exhibit R.

85.    Upon information and belief, NAI made payments to KMC, the employer or former employer of Anaya and Ribaudo, for the full amount due and owing for KMC's work performed on the Kaneland Project.

86.    Pursuant to the terms and conditions of the Kaneland Payment Bond, F&D's obligation to a Claimant is null and void if the Contractor makes payment to the Claimant for all sums due.

87.     Therefore, F&D is not liable to Anaya and Ribaudo for any sums claimed by Anaya and Ribaudo on the Kaneland Bond, as NAI previously made payment to KMC, the employer or former employer of Anaya and Ribaudo.

WHEREFORE, Plaintiff Fidelity & Deposit Company of Maryland prays that this Court enter a Declaratory Judgment in its favor and against the Defendants for the reasons stated in Count I that states:

(A)     F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Local Laborers' Funds and/or Local Laborers' Union under the Kaneland Bond as the claims made on the Kaneland Bond are preempted and superseded by Section 514(a) of ERISA, 29 U.S.C. §1144(a);

(B)     F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Local Laborers' Funds and Local Laborers' Union for their claims made against the Kaneland Bond, as they lack the requisite standing to bring a bond claim against the Kaneland Payment Bond;

(C)     F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Local Laborers' Funds and Local Laborers' Union for some or all the amounts claimed against the Kaneland Payment Bond, as they failed to mitigate their damages;

(D)     F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Local Laborers' Funds, and Local Laborers' Union for their claims made against the Kaneland Payment Bond, as they have otherwise failed to establish coverage under the Kaneland Payment Bond, including without limitation the failure to establish compliance with the conditions precedent to recovery under Illinois Public Construction Bond Act and the Kaneland Bond;

(E)   F&D is not liable to KMC Masonry, LLC for any sums claimed by KMC on the Kaneland Bond;

(F)   F&D is not liable to Olegario Anaya and Guissepe Ribaudo for any sums claimed by Olegario Anaya and Guissepe Ribaudo on the Kaneland Bond;

(G)   NAI, Papanicholas and NEPCO have a duty to F&D under the Agreement of Indemnity with F&D to indemnify it and against any and all losses that F&D may incur and any and all costs, interest, expenses and attorneys fees that F&D has incurred and will continue to incur as a result of issuing the Kaneland Payment Bond; and

(H)   That, F&D have such other and further relief as the Court deems reasonable and just.

## COUNT II

### The Cortland School Project Payment Bond

1.-42.   F&D restates its allegations contained in paragraphs 1 through 42 of Count I as paragraphs 1 through 42 of Count II.

43.   On or about September 9, 2008, NAI, as general contractor, entered into an agreement with the DeKalb Community School District #428 ("District 428"), as owner, whereby NAI agreed to furnish labor and materials for the construction of Cortland Elementary School (the "Cortland Project").

44.   On or about September 15, 2008, pursuant to NAI's request, F&D issued a payment bond (the "Cortland Payment Bond") and performance bond (the "Cortland Performance Bond") each bearing number 8842133 for the Cortland Project, each in the penal sum of $12,822,133.00 with NAI, as principal, District #428, as obligee, and F&D as the surety.

19

A copy of the Cortland Payment Bond is attached hereto as Exhibit I and a copy of the Courtland Performance bond is attached hereto as Exhibit J.

45.    On or about September 16, 2008, NAI entered into a subcontract with KMC wherein KMC agreed to furnish labor and materials for masonry on the Cortland Project. A copy of the subcontract is attached hereto as Exhibit K.

46.    Upon information and belief, NAI made payments to KMC for certain of the labor and materials KMC furnished on the Cortland Project.

47.    The Central Laborers' Union and Central Laborers' Funds served a notice of claim dated May 26, 2009, upon F&D, KMC, NAI, and District 428, wherein the Central Laborers' Union and Central Laborers' Funds asserted a claim in the amount of $74,753.03 against the Cortland Payment Bond for recovery of amounts due from KMC to its employees arising from work allegedly performed by said employees on the Cortland Project.  A copy of the said notice of claim is attached hereto as Exhibit L.

48.    The Central Laborers' Union and Central Laborers' Funds served a supplemental notice of claim dated July 20, 2009, upon F&D, KMC, NAI, and District 428, by which the Central Laborers' Union and Central Laborers' Funds asserted a claim in the amount of $130,613.09 against the Cortland Payment Bond for recovery of amounts due from KMC to its employees arising from work allegedly performed by said employees on the Cortland Project (the "Central Laborers' Cortland Bond Claim").  A copy of the said supplemental notice of claim is attached hereto as Exhibit M.

49.    The Bricklayers' Union and Bricklayers' Funds served a notice of claim dated June 2, 2009, upon KMC, NAI, and District 428, by which the Bricklayers' Union and Bricklayers' Funds asserted a claim in the amount of $167,017.77 against the Cortland Bond for

recovery of amounts due from KMC to its employees arising from work allegedly performed by said employees on the Cortland Project (the "Bricklayers' Cortland Bond Claim"). A copy of the said notice of claim is attached hereto as Exhibit N.

**ERISA Preemption**

50.     The Central Laborers' Cortland Bond Claim is premised on KMC's alleged failure to make contributions to employee benefits contribution plans as required by ERISA §502(e)(1) and (2).

51.     The Bricklayers' Cortland Bond claim is premised on KMC's alleged failure to make contributions to employee benefits contribution plans as required by ERISA §502(e)(1) and (2).

52.     By asserting a claim pursuant to the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq*, against the Cortland Bond issued by F&D for the Cortland Project, the Central Laborers' Funds, the Bricklayers' Union and Bricklayers' Funds are attempting to hold F&D responsible for KMC's failure to abide by its obligation under ERISA to make contributions to the employee benefits plans of the Central Laborers' Funds and Bricklayers' Funds.

53.     Section 514(a) of ERISA, 29 U.S.C. §1444(a), preempts and supersedes any and all claims under State laws that relate to, connect to, or make reference to any employee benefit plan.

54.     The Central Laborers' Union and Central Laborers' Funds allege that KMC failed to make contributions to Central Laborers' Pension Fund, North Central Illinois Laborers' Health and Welfare Fund, Northern Illinois Annuity Fund, Illinois Laborers' and Contractors Joint Apprenticeship And Training Fund, Midwest Region Foundation For Fair Contracting, Inc., Northern Illinois Welfare Fund, Industry Advancement Fund, Laborers'-Employers Cooperation

21

Education Trust, Vacation Fund, Market Promotion Fund, Organizational Fund, and Dues Checkoff & Working Dues and Plan Participants. Those Funds are each related to, connected to, or make reference to an employee benefit plan under ERISA.

55.    The Bricklayers' Union and Bricklayers' Funds allege that KMC failed to make contributions to Bricklayers' Pension Fund and Bricklayers' Welfare Fund. Those Funds are each related to, connected to, or make reference to an employee benefit plan under ERISA.

56.    The claims asserted by the Central Laborers' Funds and Bricklayers' Funds for KMC's alleged failure to make contributions to the Central Laborers' Funds and the Bricklayers' Funds are therefore, related to, connected to, or make reference to an employee benefit plan.

57.    Therefore, the claims that the Central Laborers' Funds and Bricklayers' Funds have asserted against F&D and its obligations under the Cortland Payment Bond, are preempted, superseded and governed by ERISA, rather than the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq.*

**Unions and Funds Have No Standing**

58.    F&D has no contractual relationship with the Central Laborers' Union, Central Laborers' Funds, Bricklayers' Union or Bricklayers' Funds in relation to the Cortland Payment Bond and is not a signatory to any labor agreements or trust agreements with the Central Laborers' Union or the Central Laborers' Funds; and therefore, has no obligation under ERISA 29 U.S.C. §1145 to make contributions to either the Central Laborers' Funds nor the Bricklayers' Funds.

59.    Pursuant to the terms and conditions of the Cortland Payment Bond, the Central Laborers' Union, the Bricklayers' Union, the Central Laborers' Funds and the Bricklayers' Funds are not claimants within the meaning of the Cortland Payment Bond.

60.     The term Claimant as used in the Cortland Payment Bond is defined in pertinent part as:

> §15.1     An individual or entity having direct contact with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract.

61.     The Central Laborers' Union, Bricklayers' Union, Central Laborers' Funds and Bricklayers' Funds are subject to the conditions and limitations contained within the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq.*

62.     Under Section 1 of the Illinois Public Construction Bond Act, 30 ILCS 550/1, only the principal contractor and subcontractors can assert a payment bond claim for labor performed and/or materials furnished in the performance of the contract for public improvements.

63.     The Central Laborers' Union, Bricklayers' Union, Central Laborers' Funds, and Bricklayers' Funds did not furnish any labor, materials or equipment for use in the performance of the construction of the Cortland Project.

64.     Therefore, under the terms and conditions of the Illinois Public Contract Bond Act and the Cortland Payment Bond, the Central Laborers' Union, Central Laborers' Funds, Bricklayers' Union and Bricklayers' Funds lack the standing to assert a claim on the Cortland Payment Bond.

**Failure to Mitigate**

65.     Upon information and belief, NAI was notified prior to April 2009 by the Central Laborers' Funds that KMC had been delinquent in its fund contributions to the Central Laborers'

23

Funds and Central Laborers' Union for the work KMC's employees allegedly performed on the Cortland Project.

66.    Upon information and belief, after receiving notice from the Central Laborers' Union and Central Laborers' Funds, NAI withheld the amounts due to the Central Laborers' Funds from the progress payments to KMC and made KMC's contribution payments directly to the Central Laborers' Funds.

67.    On or about May 26, 2009, F&D was notified by counsel for the Central Laborers' Funds that KMC had been delinquent in its fund contributions to the Central Laborers' Funds and Central Laborers' Union for the work KMC's employees performed on the Cortland Project from November 2008 through April 2009.

68.    The Central Laborers' Union and Central Laborers' Funds had a duty to mitigate the damages incurred by KMC's alleged failure to make contributions to the Central Laborers' Union and Central Laborers' Funds.

69.    Pursuant to the terms of the Central Laborers' CBA, when a contractor fails to make timely contributions to the Central Laborers' Funds, the Central Laborers' Union is permitted to strike said contractor's job until the contributions are made in full.

70.    The Central Laborers' CBA states in pertinent part:

> Article IX    If any Employer fails to pay into the above said funds [the Central Laborers' Funds] the arbitration procedure provided for shall become inoperative and the Union shall be entitled to resort to all legal and economic remedies including the right to strike and picket until such failure to pay has been corrected.

71.    Upon KMC's failure to make contributions to the Central Laborers' Funds, the Central Laborers' Union had the duty to mitigate its damages by removing the union workers

from KMC's portion of the job and striking the Cortland Project; thereby reducing the number of months of delinquent contributions.

72.     Therefore, because the Central Laborers' Union breached its duty to mitigate its damages and the damages of the Central Laborers' Funds, F&D is not liable to the Central Laborers' Union and Central Laborers' Funds on the Central Laborers' Cortland Bond Claim asserted against the Cortland Payment Bond.

73.     Upon information and belief, on or about April 21, 2009, NAI was notified by the Bricklayers' Funds that KMC had been delinquent in its fund contributions to the Bricklayers' Funds and Bricklayers' Union for the work KMC's employees performed on the Cortland Project.   Upon information and belief, after receiving notice from the Bricklayers' Union and Bricklayers' Funds, NAI withheld the amounts due to the Funds from the progress payments to KMC and made KMC's contribution payments directly to the Bricklayers' Funds.

74.     On or about June 25, 2009, Counsel for the Bricklayers' Funds notified F&D that KMC had failed to make payment contributions to the Funds pursuant to KMC's collective bargaining agreement and trust agreement with the Bricklayers' Union from November 2008 through April 2009 for the Cortland Project.

75.     The Bricklayers' Union and Bricklayers' Funds had a duty to mitigate the damages incurred by KMC's alleged failure to make contributions to the Bricklayers' Union and Bricklayers' Funds.

76.     Pursuant to the terms of the Bricklayers' CBA and the Bricklayers' Joint Agreement, when a contractor fails to make timely contributions to the Bricklayers' Funds, the Bricklayers' Union is permitted to stop providing labor to said contractor's job.

77. The Bricklayers' Joint Agreement states in pertinent part:

§8.16(D)    It shall be considered a violation of this Agreement for an Employer to fail to pay or comply with any provisions of this Article or any rule or regulation made by the Trustees administering the Funds.  If the Unions receive written notice from one or more of the Trustees of the Funds, designated by the Funds for that purpose, that the Employer has failed to pay in full any sum due the Funds under this Article and that such failure has continued for forty-eight (48) hours after an Employer has received written notice thereof, *the Union is permitted to stop any job* of that Employer, and may publicize such stoppage or attempted stoppage of work, until all sums due from the Employer under this Article have been paid in full… [Emphasis added]

78.    Upon KMC's failure to make contributions to the Bricklayers' Funds, the Bricklayers' Union had the duty to mitigate its damages by removing union workers or stopping KMC's portion of the job for the Cortland Project; thereby reducing the number of months of delinquent contributions.

79.    Therefore, because the Bricklayers' Union breached its duty to mitigate its damages and the damages of the Bricklayers Funds, F&D is not liable to the Bricklayers' Union and Bricklayers' Funds on the Bricklayers' Cortland Bond Claim asserted against the Cortland Payment Bond.

**KMC Bond Claim**

80.    On or about June 24, 2009, KMC served its notice of claim upon the Cortland Bond in the amount of $219,000 ("KMC Cortland Bond Claim").  A copy of the KMC Cortland Bond Claim is attached hereto as Exhibit O.

81.    Upon information and belief, NAI made payments to KMC for the full amount due and owing for KMC's work performed on the Cortland Project.

26

82.    Pursuant to the terms and conditions of the Cortland Payment Bond, F&D's obligation to a Claimant is null and void if the Contractor makes payment to the Claimant for all sums due.

83.    Therefore, F&D is not liable to KMC for any sums claimed by KMC on the KMC Cortland Payment Bond.

WHEREFORE, Plaintiff Fidelity & Deposit Company of Maryland prays that this Court enter a Declaratory Judgment in its favor and against the Defendants for the reasons stated in Count II that states:

(A) F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Central Laborers' Funds and/or Central Laborers' Union under the Cortland Bond as the claims made on the Cortland Payment Bond are preempted and superseded by Section 514(a) of ERISA, 29 U.S.C. §1144(a);

(B) F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Central Laborers' Funds and Central Laborers' Union for their claims made against the Cortland Payment Bond, as they lack the requisite standing to bring a bond claim against the Cortland Payment Bond;

(C) F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Central Laborers' Funds and Central Laborers' Union for their claims made against the Cortland Payment Bond, as they failed to mitigate their damages;

(D) F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Central Laborers' Funds, and Central Laborers' Union for their claims made against the Cortland Payment Bond, as they have otherwise failed to establish coverage under the Cortland Payment Bond, including without limitation the failure to establish

27

compliance with the conditions precedent to recovery under Illinois Public Construction Bond Act and the Cortland Bond;

(E) F&D is not liable to KMC Masonry, LLC for any sums claimed by KMC on the Cortland Payment Bond; and

(F) NAI, Papanicholas and NEPCO are liable to F&D under the Agreement of Indemnity with F&D for any and all payments that F&D may incur and any and all costs, interest, expenses and attorneys fees that F&D has incurred and will continue to incur as a result of issuing the Cortland Payment Bond; and

(G) That, F&D have such other and further relief as the Court deems reasonable and just.

## COUNT III

### The Lemont Park District Project Payment Bond

1.-42.    F&D restates its allegations contained in paragraphs 1 through 42 of the Count II as paragraphs 1 through 42 of Count III.

43.    On or about March 18, 2008, NAI, as general contractor, entered into an agreement with the Lemont Park District ("Park District"), as owner, whereby NAI agreed to furnish labor and materials for the construction of the Fitness and Aquatic Center (the "Lemont Project").

44.    On or about April 7, 2008, F&D issued a payment bond (the "Lemont Payment Bond") bearing number 08842106 for the Lemont Project, each in the penal sum of $11,275,333.00, with NAI, as the principal, Park District, as obligee, and F&D, as the surety.  A copy of the Lemont Payment Bond is attached hereto as Exhibit P.

45.     Upon information and belief, on or about December 24, 2008, NAI entered into a subcontract with KMC to furnish labor and materials for the masonry work on the Lemont Project.

46.     Upon information and belief, NAI made payments to KMC for certain of the labor and materials KMC furnished on the Lemont Project.

47.     The Bricklayers' Union and Bricklayers' Funds served a notice of claim dated June 2, 2009 upon KMC, NAI, and Park District, by which the Bricklayers' Union and Bricklayers' Funds asserted a claim in the amount of $53,908.47 against the Lemont Payment Bond for recovery of amounts due from KMC to its employees arising from work allegedly performed by said employees on the Lemont Project (the "Bricklayers' Lemont Bond Claim"). A copy of said notice of claim is attached hereto as Exhibit Q.

48.      The Local Laborers' Union and Local Laborers' Funds served a notice of bond claim on or prior to August 21, 2009 upon F&D, asserting a claim in the amount of $53,908.47 against the Lemont Payment Bond for recovery of amounts due from KMC to its employees arising from work allegedly performed by said employees on the Lemont Project (the "Local Laborers' Lemont Bond Claim").

**ERISA Preemption**

49.     The Local Laborers' Lemont Bond Claim is premised on KMC's alleged failure to make contributions to employee benefits contribution plans as required by ERISA §502(e)(1) and (2).

50.     The Bricklayers' Lemont Bond Claim is premised on KMC's alleged failure to make contributions to employee benefits contribution plans as required by ERISA §502(e)(1) and (2).

29

51.    By asserting a claim pursuant to the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq*, against the Lemont Payment Bond issued by F&D, the Laborers' Union, Laborers' Funds, Bricklayers' Union and Bricklayers' Funds are attempting to hold F&D responsible for KMC's failure to abide by its obligation under ERISA to make contributions to the employee benefits plans of the Funds.

52.    Section 514(a) of ERISA, 29 U.S.C. §1444(a), preempts and supersedes any and all claims under State laws that relate to, connect to, or make reference to any employee benefit plan.

53.    The Local Laborers' Union and Local Laborers' Funds allege that KMC failed to make contributions to the Laborers' Pension Fund, Laborers' Welfare Fund Of The Health And Welfare Department Of The Construction And General Laborers' District Council Of Chicago And Vicinity, The Construction And General Laborers' District Council Of Chicago And Vicinity Training Fund, The Laborers' District Council Labor-Management Cooperation Committee, The Chicago Area Independent Contractors' Association, The Laborers' Employers' Cooperation And Education Trust, And The Construction And General Laborers' District Council Of Chicago. Those Funds are each related to, connected to, or make reference to an employee benefit plan under ERISA.

54.    The Bricklayers' Union and Bricklayers' Funds allege that KMC failed to make contributions to Bricklayers' Pension Fund and Bricklayers' Welfare Fund. Those Funds are each related to, connected to, or make reference to an employee benefit plan under ERISA.

55.    The claims asserted by the Local Laborers' Funds and Bricklayers' Funds for KMC's alleged failure to make contributions to the Local Laborers' Funds and the Bricklayers' Funds are therefore, related to, connected to, or make reference to an employee benefit plan.

56.    Therefore, the claims that the Local Laborers' Funds and Bricklayers' Funds have asserted against F&D and its obligations under the Lemont Payment Bond, are preempted, superseded and governed by ERISA, rather than the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq.*

**Unions and Funds Have No Standing**

57.    F&D has no contractual relationship with the Local Laborers' Union, Bricklayers' Union, Local Laborers' Funds, nor the Bricklayers' Funds in relation to the Lemont Payment Bond and is not a signatory to any labor agreements or trust agreements with the Local Laborers' Union, Bricklayers' Union, Local Laborers' Funds, and Bricklayers' Funds; and therefore, has no obligation under ERISA 29 U.S.C. §1145 to make contributions to either the Bricklayers' Funds nor the Local Laborers' Funds.

58.    Pursuant to the terms and conditions of the Lemont Payment Bond, the Local Laborers' Union, the Bricklayers' Union, the Local Laborers' Funds and the Bricklayers' Funds are not claimants within the meaning of the Lemont Payment Bond

59.    The term "Claimant" in the Lemont Payment Bond is defined in pertinent part as:

> §1  A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material or both, used or reasonably required for use in the performance of the Contract, labor and material to be construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

60.    The Local Laborers' Union, the Bricklayers' Union, the Local Laborers' Funds and the Bricklayers' Funds did not have contracts with KMC to furnish labor, materials or equipment to the Lemont Project.

61.    The Local Laborers' Union, Bricklayers' Union, Local Laborers' Funds and Bricklayers' Funds are subject to the conditions and limitations contained within the Illinois Public Construction Bond Act, 30 ILCS 550, *et seq.*

62.    Under Section 1 of the Illinois Public Construction Bond Act, 30 ILCS 550/1, only the principal contractor and subcontractors can assert a payment bond claim for labor performed and/or materials furnished in the performance of the contract for public improvements.

63.    The Local Laborers' Union, Bricklayers' Union, Local Laborers' Funds and the Bricklayers' Funds did not furnish any labor, materials or equipment for use in the performance of the construction of the Lemont Project.

64.    Therefore, under the terms of the Illinois Construction Bond Act and the Lemont Payment Bond, the Local Laborers' Union, the Bricklayers' Union, the Local Laborers' Funds and the Bricklayers' Funds lack the standing to assert a claim on the Lemont Payment Bond.

**Failure to Mitigate**

65.    Upon information and belief, prior to April 21, 2009, NAI was notified by the Local Laborers' Funds that KMC had been delinquent in its fund contributions to the Local Laborers' Funds and Local Laborers' Union for the work KMC's employees allegedly performed on the Lemont Project from November 2008 through April 2009.

66.    Upon information and belief, after receiving notice from the Local Laborers' Union and Local Laborers' Funds, NAI withheld the amounts due to the Local Laborers' Funds from the progress payments to KMC and made KMC's contribution payments directly to the Local Laborers' Funds.

67.    On or about August 21, 2009, Counsel for the Local Laborers' Funds notified F&D that KMC had failed to make payment contributions to the Local Laborers' Funds pursuant to KMC's collective bargaining agreement and trust agreement with the Local Laborers' Union from November 2008 through April 2009 for the Lemont Project.

68.    The Local Laborers' Union and Local Laborers' Funds had a duty to mitigate the damages incurred by KMC's alleged failure to make contributions to the Local Laborers' Union and Local Laborers' Funds.

69.    Pursuant to the terms of the Local Laborers' CBA and the Local Laborers' Joint Agreement, when a contractor fails to make timely contributions to the Local Laborers' Funds, the Local Laborers' Union is permitted to stop providing labor to said contractor's job.  A copy of the Local Laborers' Joint Agreement is attached hereto as Exhibit G.

70.    The Local Laborers' Joint Agreement states in pertinent part:

> Article XI ¶5    The Union reserves and shall have the right to remove its men from any job upon the failure of the Employer to pay the wages due any of its Employees or fringe benefits which may be due by reason of the hours of employment.

71.    Upon KMC's failure to make contributions to the Local Laborers' Funds, the Local Laborers' Union had the duty to mitigate its damages by stopping the job or removing the union workers from KMC's portion of the job for the Lemont Project; thereby reducing the number of months of delinquent contributions.

72.    Therefore, because the Local Laborers' Union breached its duty to mitigate its damages and the damages of the Local Laborers' Funds, F&D is not liable to the Local Laborers' Union and Local Laborers' Funds on the Local Laborers' Lemont Bond Claim asserted against the Lemont Payment Bond.

33

73.    Upon information and belief, on or about April 21, 2009, NAI was notified by the Bricklayers' Funds that KMC had been delinquent in its fund contributions to the Bricklayers' Funds and Bricklayers' Union for the work KMC's employees performed on the Lemont Project from November 2008 through April 2009.

74.    On or about June 25, 2009, the Bricklayers' Funds notified F&D that KMC had failed to make payment contributions to the Bricklayers' Funds pursuant to KMC's collective bargaining agreement with the Bricklayers' Union from November 2008 through April 2009 for the Lemont Project.

75.    The Bricklayers' Union and Bricklayers' Funds had a duty to mitigate the damages incurred by KMC's alleged failure to make contributions to the Bricklayers' Union and Bricklayers' Funds.

76.    Pursuant to the terms of the Bricklayers' CBA and the Bricklayers Joint Agreement, when a contractor fails to make timely contributions to the Bricklayers Funds, the Bricklayers' Union is permitted to stop providing labor to said contractor's job.

77.    The Bricklayers' Joint Agreement states in pertinent part:

> §8.16(D)    It shall be considered a violation of this Agreement for an Employer to fail to pay or comply with any provisions of this Article or any rule or regulation made by the Trustees administering the Funds.  If the Unions receive written notice from one or more of the Trustees of the Funds, designated by the Funds for that purpose, that the Employer has failed to pay in full any sum due the Funds under this Article and that such failure has continued for forty-eight (48) hours after an Employer has received written notice thereof, *the Union is permitted to stop any job* of that Employer, and may publicize such stoppage or attempted stoppage of work, until all sums due from the Employer under this Article have been paid in full… [Emphasis added]

78.    Upon KMC's failure to make contributions to the Bricklayers' Funds, the Bricklayers' Union had the duty to mitigate its damages by stopping KMC's portion of the job for the Lemont Project; thereby reducing the number of months of delinquent contributions.

79.    Therefore, because the Bricklayers' Union breached its duty to mitigate its damages and the damages of the Bricklayers' Funds, F&D is not liable to the Bricklayers' Union and Bricklayers' Funds on the Bricklayers' Lemont Bond Claim asserted against the Lemont Payment Bond.

WHEREFORE, Plaintiff Fidelity & Deposit Company of Maryland prays that this Court enter a Declaratory Judgment in its favor and against the Defendants for the reasons stated in Count III that states:

(A) F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Local Laborers' Funds and/or Local Laborers' Union under the Lemont Payment Bond as the claims made on the Lemont Payment Bond are preempted and superseded by Section 514(a) of ERISA, 29 U.S.C. §1144(a);

(B) F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Local Laborers' Funds and Local Laborers' Union for their claims made against the Lemont Payment Bond, as they lack the requisite standing to bring a bond claim against the Lemont Payment Bond;

(C) F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Local Laborers' Funds and Local Laborers' Union for their claims made against the Lemont Payment Bond, as they failed to mitigate their damages;

(D) F&D is not liable to the Bricklayers' Funds, Bricklayers' Union, Local Laborers' Funds, and Local Laborers' Union for their claims made against the Lemont

Payment Bond, as they have otherwise failed to establish coverage under the Lemont Payment Bond, including without limitation the failure to establish compliance with the conditions precedent to recovery under Illinois Public Construction Bond Act and the Lemont Bond;

(E) NAI, Papanicholas and NEPCO are liable to F&D under the Agreement of Indemnity with F&D for any and all losses that F&D may incur and any and all costs, interest, expenses and attorneys fees that F&D has incurred and will continue to incur as a result of issuing the Lemont Payment Bond; and

(F) That, F&D have such other and further relief as the Court deems reasonable and just.

Respectfully submitted,
FIDELITY & DEPOSIT COMPANY OF MARYLAND


By: _____/s/ Regina E. Gaebel_____
            One of its attorneys


Cornelius F. Riordan (IL ARDC #2342634)
criordan@rmp-llc.com
Regina E. Gaebel (IL ARDC #6282939)
rgaebel@rmp-llc.com
RIORDAN MCKEE & PIPER, LLC
20 N. Wacker Dr., #910
Chicago, IL 60606
(312) 663-9400